IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHELDON W. CARMON ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:17-cv-00966 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| CSX TRANSPORTATION, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 30). Plaintiff has filed a Response (Doc. No. 39), Defendant has filed a Reply (Doc. No. 41), and with the Court's permission (Doc. No. 46), Defendant has filed a Sur-Reply (Doc. No. 47).

## BACKGROUND

Plaintiff Carmon filed this action pursuant to the Federal Employers Liability Act ("FELA"), 45 U.S.C. §§ 51–60. In his Complaint, Plaintiff alleges that he was employed by Defendant CSX Transportation, Inc. ("CSXT"), which is a common carrier operating railroads throughout the Southeast. Plaintiff asserts that he was a welder and welder helper for Defendant and was injured in the course and scope of his employment on December 6, 2016. He claims that he was at Ekin control point north of Nashville, near Madison, Tennessee, walking south on the east side of the Number 2 Main Line, at which point he tripped on a signal wire that was partially above ground but not visible. Plaintiff alleges that he fell over the signal wire and sustained serious, painful and permanent injury to his neck area, resulting in permanent disability. Plaintiff sued Defendant for negligence under FELA.

## **SUMMARY JUDGMENT**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.* A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628.

A party asserting that a fact cannot be or genuinely is disputed—i.e., a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility

judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## **NEGLIGENCE UNDER FELA**

FELA was specially enacted by Congress to afford relief to employees from injury incurred in the railway industry. *Seto v. CSX Transp. Inc.*, Civil No. 3:15-cv-1135, 2017 WL 4556723, at * 7 (M.D. Tenn. July 6, 2017) (citing *Edsall v. Penn Cent. Transp. Co.*, 479 F. 2d 33, 35 (6th Cir. 1973)). FELA provides that every railroad common carrier engaged in interstate commerce shall be liable in damages to any person suffering injury while he is employed by such carrier for such injury resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. 45 U.S.C. § 51. FELA does not impose a duty to eliminate all workplace dangers; instead, it requires railroads to provide their employees with a reasonably safe workplace. *Gilreath v. CSX Transp., Inc.*, No. 6:16-cv-96, 2018 WL 737607, at * 4 (E.D. Ky. Feb. 6, 2018).

In order to recover damages under FELA, a plaintiff must show that: (1) he was injured while in the scope of his employment; (2) which employment was in furtherance of the railroad's interstate transportation business; (3) his employer was negligent; and (4) his employer's negligence played some part in causing the injury for which he seeks compensation. *Seto*, 2017 WL 4556723 at * 8. To show that the employer is liable for negligence, the employee must prove the traditional common law elements of negligence—duty, breach, foreseeability, and causation.

3

*Id*. An essential element of a plaintiff's FELA negligence claim is that the injury he sustained was reasonably foreseeable to the defendant. *CSX Transp. v. McBride*, 564 U.S. 685, 703 (2011); *Beamer v. CSX Transp., Inc.*, Case No. 3:10-cv-472, 2014 WL 12588330, at * 3 (S.D. Ohio Mar. 31, 2014). To overcome a motion for summary judgment based on foreseeability of harm, a plaintiff must present evidence sufficient to give rise to a reasonable inference that the defendant "knew or should have known that it was not acting adequately to protect its employees." *Id*.; *Williams v. Grand Trunk Western R.R., Inc.*, 352 F. App'x 13, 17 (6th Cir. 2009). In other words, a railroad has breached its duty when it "knew, or by the exercise of due care should have known, that prevalent standards of conduct were inadequate to protect employees." *Gilreath*, 2018 WL 737607, at * 4. Thus, if a person has no reasonable ground to anticipate that a particular condition would or might result in a mishap and an injury, then the party is not required to do anything to correct the condition. *McBride*, 564 U.S. at 703.

To establish liability under FELA, a plaintiff must also prove that the railroad's negligence[1] was "in whole or in part the cause of the injury." *Gulliver v. National R.R. Passenger Corp.*, No. 16-cv-2219, 2019 WL 2613214, at * 2 (D. D.C. Apr. 25, 2019) (quoting *Ellis v. Union Pac. R. Co.*, 329 U.S. 649, 653 (1947)) But a relaxed standard of causation applies, under which a railroad is deemed to have caused or contributed to a railroad worker's injury if the railroad's negligence played a part—no matter how small—in bringing about that injury. *McBride*, 564 U.S. at 705. The test is "whether the proofs justify with reason the conclusion that employer negligence played any

---

[1] The Supreme Court has defined "negligence" under FELA as "the lack of due care under the circumstances, or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation." *Gulliver*, 2019 WL 2613214 at * 2. The question is whether the carrier failed to observe "that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances." *Id*. (citing *McBride*, 564 U.S. at 703).

4

part, even the slightest, in producing the injury" for which damages are sought. *Sapp v. CSX Transp., Inc.*, No. 3-09-0581, 2010 WL 4055951, at * 11 (M.D. Tenn. Oct. 15, 2010). [2]

Plaintiff contends that Defendant was negligent in laying the signal wire, failing to provide Plaintiff with a safe place to work, and failing to adequately maintain and inspect the work area and signal wire. Defendant first asserts that Plaintiff has no evidence that CSXT negligently installed the signal wire. Defendant argues that with no evidence of how or when CSXT installed the wire, Plaintiff cannot show that it was negligently installed. Defendant has shown that Plaintiff took no discovery relevant to the signal wire's installation and has presented no factual support for this argument. Defendant has carried its initial burden on this issue.

In his Response, Plaintiff states only that the signal wire "had been installed by the signal department of CSXT," a fact undisputed by Defendant. Although he later alleges that "[t]here is evidence in the record that CSXT negligently installed the signal wire by leaving it above ground" (Doc. No. 39 at 3), Plaintiff cites nothing in the record for that assertion.[3] Plaintiff also alleges that "there is evidence in the record that defendant CSXT created the condition" (*Id*. at 4), but again he cites nothing in the record for that assertion. Plaintiff has not identified when or how the installation was conducted, by whom, or in what way the installation was negligent. Plaintiff has failed to point to any specific evidence in the record or come forward with any evidence to show

---

[2] In light of this "prescription for proximate causation in FELA cases," *McBride*, 564 U.S. at 705, a railroad "caused or contributed to" a worker's injury if the railroad's negligence played a part, no matter how small, in bringing about the injury. *Id.* It follows, therefore, that there are no issues of contributory negligence or comparative fault in this case.

[3] On that same page, Plaintiff states that Defendant created the hazard "by failing to install" signal wire and that "[b]y failing to install wire," Defendant created a hazardous condition. The Court is perplexed as to how Defendant could have both failed to install and negligently installed the subject signal wire.

5

that Defendant negligently installed the subject signal wire, so that portion of his negligence claim will be dismissed.

Next, Defendant argues there is no evidence that Defendant failed to adequately maintain and inspect Plaintiff's work area and that this in turn reveals a lack of evidence that Defendant negligently failed to provide a safe place for Plaintiff to work. Defendant has presented evidence that its "signal maintainer," Michael Kelley, noticed some exposed wires within the Ekin control point on November 28, 2016, and that he buried those wires (Doc. No. 32-4). Defendant has also presented evidence that its "roadmaster," Stephen Love, "high-railed" the Ekin control point area multiple times per week in the month preceding Plaintiff's fall and did not observe any exposed conduit or signal wires (Doc. No. 32-2). Defendant has pointed to Plaintiff's deposition to show that neither Plaintiff nor his co-worker saw the subject signal wire the day of Plaintiff's fall (Doc. No. 32-1). Defendant has carried its initial burden on this issue.

Plaintiff asserts, in response to Defendant's motion, that in fact Kelley was not at the Ekin control point on November 28, 2016 and that Love did not inspect the Ekin control point area in the weeks prior to Plaintiff's fall. The evidence upon which Plaintiff relies appears to be "Sworn Statements" of Victor Reed, Norman Bess, and Wesley Grogan (Doc. Nos. 38-1, 38-2, and 38-3). Reed, Bess, and Grogan are CSX employees whose sworn statements were taken by Plaintiff's counsel without cross-examination by (or even notice to) Defendant. In a prior Order (Doc. No. 46), the Court ruled that it would treat these "Sworn Statements" as affidavits in support of Plaintiff's position and would allow Defendant additional time to depose and/or file its own affidavits from these witnesses. *Id*.

In their statements, Bess and Grogan testified, when shown a certain document by Plaintiff's counsel, that the document was a CSX "704 EC-1 report" that reflected the names of

CSX employees who obtained permission to work on certain parts of the tracks by obtaining certain required "704 protection" from Defendant to keep them safe while working there. Bess explained that the protection was to ensure that tracks being worked on had no trains coming: "no trains or anything is supposed to come into that area unless you give them permission to." Doc. No. 38-2 at 11. Based solely upon the document produced by Plaintiff's counsel, Bess testified that Kelley was not at the Ekin control point on November 28, 2016 (as he claimed) because there was no record that he had the required 704 safety protection for that day (Doc. No. 38-2 at 11-12). Gorgan testified, based on the same document, that Love was not at the Ekin control point the week before December 6, 2016 (as he claimed) because there was no record that he had requested or obtained the required 704 protection for that time period (Doc. No. 38-3 at 8-9).

Defendant has shown, however, that there are *four* ways to obtain the required protection for working on the tracks, and Plaintiff has not addressed the other three ways. *Grogan* noted in his sworn statement that one way an employee could do the work without getting an EC-1 or 704 protection was by having another person with him as a "watchman lookout" (Doc. No. 38-3 at 8). At his subsequent deposition, Grogan confirmed that there are actually four ways a railroad worker can have permission to work on a track: 704 protection, "707 protection," "watchman protection," and "long worker protection" (Doc. No. 47-1 at 4). He stated that "watchman protection" is satisfied if there are two employees at the site, one to do the work and one to watch the tracks (*Id*. at 5). He also stated that when two employees work together, if one employee has 704 protection, the other employee does not also have to request protection (*Id*. at 6). Finally, he testified that if there were a group of three signal maintainers out burying wires at the same place, they could us the watchman protection to accomplish their work (*Id*. at 12). Grogan also stated that he did not

know what Mike Kelley did on November 28, 2016, whether he was at the Ekin site or not (Doc. No. 47-1 at 10 (Dep. at 21)).

In response, Michael Kelley declared that on November 28, 2016, when he buried the signal wires at Ekin control point, he was part of a crew of three men, one of whom acted as the watchman, so they had watchman protection and were not required to get 704 protection (Doc. No. 41-3). His statement is supported by statements from the other members of his "crew." (*Id.*) Similarly, in response to Plaintiff's assertion that Stephen Love could not have been in the Ekin area before Plaintiff's fall (since Love lacked 704 protection), Love has stated that when he "high-railed" the Ekin area in the weeks before Plaintiff's fall, he made those inspections with other employees who had obtained the relevant protections for their work (Doc. No. 41-4).[4] Nothing in Plaintiff's filings disputes these assertions.[5] The Court finds that Plaintiff has not rebutted the testimony of Kelley and Love regarding their inspection and work at the Ekin control point in the weeks just before Plaintiff's fall.

In any event, Plaintiff has not shown that Defendant knew or should have known that this particular signal wire was out of place. He has not demonstrated that Defendant had actual or

---

[4] For both Kelley and Love, their respective Second Declarations do not contradict their respective First Declarations on these points, because nothing was discussed in the First Declarations about these forms of protection.

[5] Love's explanation also rebuts Plaintiff's expert's assertion that Love did not use a high-rail vehicle on this track shortly before Plaintiff's injury on December 6, 2016. The document upon which Plaintiff's expert relies in making this assertion (Doc. No. 38-4 at 10) is a report of "Form 704 Minutes" and "All Form 704 Time." According to Plaintiff's expert, this document shows all of Love's use of a high-rail vehicle between September 1, 2016 and July 1, 2017, and yet does not show any such use prior to December 6, 2016. Actually, however, by its terms this document does not purport to show Love's use of a high-rail vehicle; instead, by its terms it purports to show only Love's Form 704 Time (*Id.*) As Love explained, the Form 704 Minutes would record the time for which Love obtained 704 protection in particular, but not necessarily all the time he worked on this particular track (in a high-rail vehicle or otherwise), because he made inspections with others who obtained the relevant protection. (Doc. No. 41-4).

constructive notice of the exposed wire. For example, he has not presented evidence that any of Defendant's employees actually saw the exposed wire before Plaintiff fell, that anyone complained about or reported dangers concerning this wire, that anyone had previously fallen in the same place, or that anyone had requested repairs at this spot.

Plaintiff's expert, Joe Lydick, opined in his Affidavit (Doc. No. 38-4) that Defendant was negligent in its construction of the wire in question. He testified, however, that he did not know or investigate when the wire was installed (Doc. No. 32-3 at 3-4 (Dep. at 12 and 19)) and has no evidence that the wire was exposed when installed, since he does not know how long it had been exposed. (Doc. No. 32-3 at 7 (Dep. at 60)). He knows only how it appeared on the day of Plaintiff's fall (from photographs) and the day he later inspected it. (*Id.*) Lydick has shown no factual basis for opining that the wire was negligently installed. In fact, there is no evidence in the record of how or when Defendant installed the signal wire at issue.

Lydick also opines that Defendant negligently exposed Plaintiff to an unnecessary risk by leaving exposed bootleg wires lying on top of the ballast. (Doc. No. 38-4). Plaintiff has conceded, however, that Lydick has no knowledge of how long the subject wire was exposed, when the area was last inspected, or whether Defendant knew of the wire's condition before Plaintiff fell. (Doc. No. 38 at ¶ 18). Lydick agreed that he has no evidence that anyone had reported the exposure to Defendant (Doc. No. 32-3 at 7-8 (Dep. at 60-61)). There is no dispute that a wire was exposed. What Lydick has not shown is a factual basis for opining that Defendant knew or should have known[6] that the wire was exposed.

---

[6] As explained above, to show Defendant's negligence, Plaintiff must show that Defendant had a reasonable ground to anticipate that a particular condition would or might result in a mishap and an injury; in other words, Plaintiff must show that Defendant had actual or constructive notice of the allegedly dangerous condition. *McBride*, 564 U.S. at 703. Given the evidence in this case, Plaintiff, at best, could hang his hat only on constructive knowledge.

These gaps in Lydick's personal knowledge of the condition of the wire and tracks in the period before Plaintiff fell suggest that Lydick's opinions fail to provide a basis for a finding of constructive knowledge by Defendant. Moreover, Lydick did not otherwise provide a factual basis for a finding of constructive knowledge, such as by relying on information that, though not within his personal knowledge, is typically relied upon by experts in his field in forming this kind of opinion. His lack of personal knowledge also undermines his opinions that Defendant was not in compliance with regulations and its own drawings concerning the installation and maintenance of signal wires.

Furthermore, Mr. Lydick's opinions regarding the seminal issue of whether Defendant was negligent, though not necessarily inadmissible, are entitled to little weight because the Court is equipped to opine on this itself, without alleged expert assistance, based on the evidence before it. And Mr. Lydick's opinions fail to save Plaintiff's claims for an even more basic reason: none has not been shown to be an admissible expert opinion. That is, his Affidavit fails to establish several requisites for the admission of testimony under Fed. R. Evid. 702; for example, it does nothing to show that Mr. Lydick's opinion testimony is based on sufficient facts or data and is the result of reliable principles and methods that have been reliably applied to the facts of this case. *See* Fed. R. Evid. 702(b)-(d).

Plaintiff's conclusory and unsupported assertions are insufficient to create a genuine issue of material fact and defeat summary judgment. The Court finds that Plaintiff, in response to Defendant's satisfaction of its initial burden, has not carried his burden to show that Defendant had actual or constructive notice of the alleged exposed signal wire, a necessary element for his claim of negligence under FELA. Therefore, Plaintiff's claim must be dismissed.

**CONCLUSION**

Plaintiff's injury is unfortunate, but proof of injury itself, absent proof of negligence, is not sufficient for recovery. *Johnson v. Grand Trunk Western R.R., Inc.*, No. 07-cv-11129, 2008 WL 283703, at * 3 (E.D. Mich. Jan. 31, 2008) (workplace injury alone is not sufficient to establish negligence under FELA); *Wheeler v. Ill. Cet. R.R. Co.*, Civil Action No. 2:09cv008, 2010 WL 4867410, at * 6 (S.D. Miss. Nov. 9, 2010) (same). For these reasons, Defendant's Motion for Summary Judgment (Doc. No. 30) will be granted, and Plaintiff's FELA claims will be dismissed. An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE